***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. At the time of the February 6, 1998, injury that gave rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage was $917.20 (which yields a compensation rate of $611.47).
4. Defendant admitted plaintiff's right to compensation for the injury by accident that she sustained on February 6, 1998.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 6, 1998, plaintiff sustained a compensable back injury when she tried to prevent a file cart from turning over.
2. Plaintiff has pre-existing Type I diabetes, Hashitomo's Thyroiditis, hypothyroidism, hypercholesterolemia, and hypertension.
3. Plaintiff has used an insulin infusion pump for control of her diabetes since approximately 1988.
4. On June 25, 1998, plaintiff underwent an L4 laminectomy, repeat microdiskectomy bilaterally at L4-5, and a fusion at L4-5 with right iliac crest bone graft.
5. On December 14, 1998, and March 9, 1999, plaintiff underwent a series of Functional Capacity Evaluations, which indicated plaintiff could perform light duty work.
6. Dr. Rhyne assessed a twenty-five percent (25%) permanent partial disability rating to plaintiff's back on March 22, 1999.
7. Plaintiff was referred to Southeast Pain Care for pain management treatment. She had adverse reactions to some pain medications and was not receiving adequate pain control from those medications, so a morphine pump was surgically implanted in plaintiff's spine on February 22, 2000.
8. Dr. Gilbert from Southeast Pain Care advised on March 30, 2000, that plaintiff should not drive a vehicle with the morphine pump in place.
9. Dr. Scheutzow indicated on April 14, 2000, that plaintiff should be fully capable of performing her job. However, plaintiff was unable to return to her job as Director of Nursing for defendant because she could not drive an automobile.
10. Defendant offered plaintiff the position of UKM Clinical Support Assistant with defendant on February 20, 2002. Plaintiff refused that position.
11. Plaintiff's educational qualifications, as well as her experience as a Director of Nursing, would make plaintiff a qualified candidate for the UKM Clinical Support Assistant position, absent her numerous medical problems.
12. The UKM Clinical Support Assistant position was not created specifically for plaintiff; rather, defendant's goal was to have several of these jobs available in each business unit at some time in the near future.
13. Plaintiff can perform the duties of the UKM Clinical Support Assistant position out of her home, with access to a personal computer and the Internet. Defendant would provide all of the necessary equipment and computer systems necessary for plaintiff to complete her job. Plaintiff would not have to maintain set hours. She could take breaks as often as she likes, and space out her 40-hour workweek to when it is most convenient for her.
14. When Dr. Scheutzow last saw plaintiff on December 20, 2000, he opined that plaintiff was fully capable of returning to work.
15. Dr. Scheutzow, upon hearing an explanation of the UKM Clinical Support Assistant position, was of the opinion that such position would be an ideal job for plaintiff, provided that her condition had not deteriorated significantly since the last time he saw her in 2000.
16. However, Dr. Thomas Carlton III, who was the last doctor to evaluate plaintiff on April 29, 2002, to determine if the job offered by the defendant was suitable, stated that he did not think she was able to work given her numerous problems. Dr. Carlton opined that plaintiff did not have the cognitive ability to perform the UKM Clinical Support position, although she has the physical ability to perform the job.
17. Plaintiff has been an insulin-dependent Type I diabetic since 1978. Studies have shown that on average, Type I diabetics typically begin having kidney problems after eighteen to twenty years of being a diabetic, and then usually require dialysis within five more years.
18. Plaintiff took non-steroidal anti-inflamatories as treatment for her back injury and asserts that such medication led to her kidney problems. Years of exposure to non-steroidal anti-inflammatories are typically required to induce renal failure; however it is possible for renal failure to result from shorter exposures to such medication.
19. Dr. Burgess testified that plaintiff's exposure to the non-steroidal anti-inflammatory drugs, "possibly" or "could or might" have worsened plaintiff's kidney function. Dr. Burgess could not say that it was probable; he could only say that it was possible. He stated he could not give an opinion, to a reasonable degree of medical certainty, without knowing all the information surrounding the drugs. Dr. Burgess testified that plaintiff's kidney disease could be attributed to a number of factors, including diabetes, hypertension, a drug source injury, or a blunt trauma injury. Finally, Dr. Burgess testified that because plaintiff had both diabetes and hypertension, she is more likely to need dialysis.
20. Given the evidence of record that renal failure can occur in individuals with a short exposure history to non-steroidal anti-inflamatories, and Dr. Burgess's testimony indicating a possible link between plaintiff's worsening renal condition and her use of non-steroidal anti-inflamatories, the Full Commission finds that plaintiff's use of such medication to treat her back injury more likely than not worsened or exacerbated her pre-existing kidney problems.
21. Plaintiff contends that her chronic pain, stress, and lack of exercise, which are due to her injury and surgery, have worsened her diabetic condition.
22. Dr. Kleinmann testified through deposition that plaintiff did not maintain excellent control of her diabetes prior to her February 6, 1998, injury. His assessment from a February 13, 1997, visit was that plaintiff had Type I diabetes of many years duration with poor control. He also noted that plaintiff had poor dietary habits prior to and after the February 6, 1998, injury.
23. Plaintiff has not reached maximum medical improvement in regard to her kidneys and remains temporarily totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendant has failed to prove that plaintiff unjustifiably refused suitable employment offered to her by defendant. N.C. Gen. Stat. §97-32.
2. Plaintiff has proved by the greater weight of the evidence that the non-steroidal medications taken by plaintiff because of her compensable back injury worsened or exacerbated her pre-existing kidney problems. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has failed to prove by the greater weight of the evidence that her pre-existing diabetes has been aggravated by her compensable back injury. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all medical treatment incurred or to be incurred by plaintiff as a result of her compensable back injury for so long as such treatment is reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability.
2. Defendant shall pay for all medical treatment incurred or to be incurred by plaintiff as a result of her kidney injuries that arose out of her compensable back injury for so long as such treatment is reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability.
3. Plaintiff's claim for medical treatment for her diabetes is hereby denied and the defendant is not responsible for any medical treatment for said claims.
4. Subject to an approved attorney fee below, defendant shall continue to pay plaintiff temporary total disability compensation until further order of the Industrial Commission.
5. Defendant shall continue to pay directly to plaintiff's counsel the previously approved attorney fee in the amount of 25% of continuing weekly compensation due plaintiff, as ordered by Chief Claims Examiner Paula Barnes on January 24, 2002.
6. Plaintiff shall cooperate and submit to any reasonable request by the defendant to have further evaluation of plaintiff's ability to work should defendant have further suitable employment to offer plaintiff.
7. Defendant shall pay the costs, which include an expert witness fee of $250.00 to Dr. Richard E. Kleinmann; $450.00 to Dr. Patrick burgess; $230.00 to Dr. Thomas Kern Carlton III; and $500.00 to Dr. Mark H. Scheutzow.
This 24th day of February 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER